**21 MAG 5835**

Approved: *Ashley C. Nicolas*
           ASHLEY C. NICOLAS
           Assistant United States Attorney

Before:   THE HONORABLE SARAH L. CAVE
           United States Magistrate Judge
           Southern District of New York

- - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | SEALED COMPLAINT |
|    - v. - | Violations of 18 U.S.C. §§ 1344, 1028A, and 2 |
| LUKA KLASINC, | COUNTY OF OFFENSE: NEW YORK |
|           Defendant. | |

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

     RYAN REDEL, being duly sworn, deposes and says that he is a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
(Bank Fraud)

    1.  From at least in or about October 2020, up to and including at least in or about June 2021, in the Southern District of New York and elsewhere, LUKA KLASINC, the defendant, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, KLASINC presented false documentation to a financial institution in an attempt to secure the release of frozen funds to which he was not entitled.

    (Title 18, United States Code, Sections 1344 and 2.)

COUNT TWO
(Aggravated Identity Theft)

2. On or about October 5, 2020, in the Southern District of New York and elsewhere, LUKA KLASINC, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, KLASINC submitted a falsified document purporting to be a letter from the U.S. Small Business Administration, bearing the name and signature of specific real individual, during and in relation to the bank fraud offense charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3. I am a Special Agent with the FBI. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Overview

4. LUKA KLASINC, the defendant — a Slovenian national and former Olympic figure skater — is the sole owner of BOB77, LLC. KLASINC stated that BOB77, LLC is an event management company that, in conjunction with its global partners, stages major ice-themed amusement park style events around the world. Beginning in or around 2019, BOB77, LLC opened three business bank accounts (the "BOB77 Accounts") with an international financial institution ("Bank-1"). Between July 2020 and September 2020, the BOB77 Accounts received a total of $1,595,800 from the U.S. Small Business Administration ("SBA"), pursuant to eleven Economic Injury Disaster Loans. In the same period, there were numerous wire transfers from the BOB77 Accounts to international beneficiaries. In late September 2020, after identifying potential fraud, Bank-1 froze all funds in the BOB77 Accounts

and contacted KLASINC for additional information regarding the account activity. In response, KLASINC provided documentation — including a falsified document purporting to be a letter from SBA — intended to legitimize the SBA deposits and persuade Bank-1 to release the funds. In or around June 2021, KLASINC traveled to the United States and appeared at in person at a New York branch of Bank-1, where he again attempted to persuade Bank-1 to release the funds by claiming that the SBA deposits were "investments" and not associated with loans.

### The Economic Injury Disaster Loan Program

5.  Based on my participation in this investigation and my conversations with representatives from SBA, I have learned the following, in substance and in part:

    a.  The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") provided $2.2 trillion dollars in economic stimulus in response to the economic decline caused by the COVID-19 pandemic in the United States.

    b.  The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed the SBA to offer Economic Injury Disaster Loan ("EIDL") funding to business owners negatively affected by the pandemic (the "EIDL Program").

    c.  In order to apply for a loan under the EIDL Program, applicants use the SBA online portal (the "SBA Portal") to submit an application containing personal and business information (the "EIDL Application"). The EIDL Application requires applicants to affirm that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

    d.  The EIDL Application requires applicants to provide information relating to the size of the affected business entity, the ownership of said business, and other information, such as the number of employees and gross business revenues realized in the 12 months prior to COVID-19's impact on the national economy. This information, submitted by the applicant, is then used by SBA systems to calculate the principle amount of money the small business is eligible to receive in the form of an EIDL. Loans disbursed under the EIDL Program are capped at $150,000.

   e. Pursuant to the provisions governing the EIDL Program, loan proceeds must be used by that business for certain permissible expenses.  The EIDL loans may be used by the applicant business - which must have existed in an operational condition on February 1, 2020 - to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

BOB77, LLC

  6. Based on my review of records and documents provided by an international financial institution ("Bank-1"), I have learned, among other things, the following:

   a. BOB77, LLC ("BOB77") is a limited liability company that was formed in Delaware on or about August 23, 2019.

   b. LUKA KLASINC, the defendant, is a Slovenian national and former Olympic figure skater who is the sole owner and chief executive officer ("CEO") of BOB77.

   c. KLASINC stated that BOB77 is an event management company that works with other entities to set up "ice amusement parks," that have included "Fun Park" in Warsaw, Poland, "Ice Fun Park" in Dusseldorf, Germany, and the "Winter Classic," in Ljubljana, Slovenia.

The Bank-1 Accounts

  7. Based on my review of records provided by Bank-1, I have learned, among other things, the following:

   a. On or about September 19, 2019, LUKA KLASINC, the defendant, established a business checking account for BOB77 at Bank-1.  The account had an account number ending in 7285 ("BOB77 Account-1").

   b. At the time that KLASINC created BOB77 Account-1, he named himself as the sole transactional signer on the account.

   c. On or about July 31, 2020, two additional accounts were opened and associated with BOB77.  The additional accounts have account numbers ending in 2349 ("BOB77 Account-2") and 2381 ("BOB77 Account-3, and together with BOB77 Accounts-1 and -2, the "BOB77 Accounts").

The EIDL Applications

8. Based on my review of records provided by SBA as well as Bank-1, I have learned, among other things, the following:

    a. Between on or about July 4, 2020, at 11:00 p.m., and on or about July 5, 2020 at 12:22 a.m., eight EIDL loan applications were submitted through the SBA Portal from a particular IP address, originating in Dallas, Texas (the "July 4-5 Applications"). Each July 4-5 Application bore the name of a different individual, all of whom claimed to reside in Iowa.[1] Each July 4-5 Application listed a different phone number, all of which began with a 614 (Central Ohio) area code. The July 4-5 Applications each directed funds to be disbursed to different bank accounts at a single national financial institution ("Bank-2").

    b. On or about July 12, 2020, an EIDL loan application (the "July 12 Application") was submitted on behalf of "BOB77 FARMS." The July 12 Application directed funds to be disbursed to an account at Bank-1.

    c. On or about July 24, 2020, an EIDL loan application (the "July 24 Application") was submitted from an IP address originating in Florissant, Missouri.

    d. On or about August 18, 2020, an EIDL loan application (the "August 18 Application") was submitted on behalf of a Florida based construction company. The August 18 Application directed funds to be disbursed to BOB77 Account-1.

9. Based on my conversations with an SBA representative, I have learned that EIDL applicants may change the bank account into which they want funds disbursed, even after the EIDL application has been submitted. Prior to late July 2020, applicants could also update bank account information over the phone, through an SBA loan officer.

10. Based on my review of records provided by SBA and my conversations with an SBA employee, I have learned that usernames associated with eight of the eleven EIDL loan applications described above in ¶ 8 (the "EIDL Applications"),

---

[1] Based on my review of the EIDL Applications, I know that one of the July 4-5 Applications bore the name of an elderly woman in Iowa ("Victim-1") and was submitted on behalf of a farm bearing her name. On or about June 4, 2021, I spoke with Victim-1's granddaughter who informed me that (i) Victim-1 does not own a farm, and (ii) Victim-1 did not submit an EIDL Application.

5

logged into the SBA Portal after the EIDL Applications were submitted. Because, as further described further below, the funds disbursed pursuant to the EIDL Applications were ultimately deposited in the BOB77 Accounts — and not the accounts originally specified on the EIDL Applications — I believe that someone requested that the funds be redirected to BOB77 Accounts after the EIDL Applications were originally submitted, either through the SBA Portal or by phone.

Funds Deposited in the BOB77 Accounts

11.  Based on my review of records provided by Bank-1 and SBA, as well my conversations with a Bank-1 employee, I have learned, among other things, the following:

a.  On or about July 8, 2020, SBA deposited $599,600 pursuant to four of the July 4-5 Applications into BOB77 Account-1.

b.  Between on or about July 8, 2020 and on or about July 10, 2020, eight wire payments ranging in amounts from $750 to $40,0000 were made from BOB77 Account-1 to beneficiaries in, among other places, China and Slovenia.

c.  On or about July 14, 2020, SBA deposited $747,500 pursuant to four of the July 4-5 Applications and the July 12 Application, into BOB77 Account-1.

d.  Between on or about July 14, 2020 and on or about August 4, 2020, twelve wire payments ranging in amounts from $505 to $399,960 were made from BOB77 Account-1 to beneficiaries in, among other places, Mexico, China, and India.

e.  On or about August 6, 2020, SBA deposited $143,300 pursuant to the July 24 Application, into BOB77 Account-2.

f.  On or about August 13, 2020, and again on or about August 24, 2020, the BOB77 Accounts received wire payments in the amounts of $25,675 and $32,202.50, respectively, from a construction company based in Montana (the "Montana Company"). On or about August 25, 2020, the Montana Company reported both wire transfers as fraudulent.

g.  Between on or about August 6, 2020, and on or about August 27, 2020, six wire payments ranging in amounts from

$1,750 to $93,080, were made from the BOB77 Accounts to beneficiaries in, among other places, China and Mexico.

       h.  On or about September 1, 2020, SBA deposited $105,400 pursuant to the August 18 Application, into BOB77 Account-1.

       i.  Between on or about September 1, 2020, and on or about September 24, 2020, nine wire payments ranging in amount from $247 to $450,000 were made from the BOB77 Accounts to beneficiaries in, among other places, Slovenia.

    12.  Based on my conversations with an employee of Bank-1 and an SBA employee as well as a review of records provided by Bank-1, I have learned, among other things, the following:

       a.  On or about September 23, 2020 — after identifying potentially fraudulent activity — Bank-1 froze all remaining funds in the BOB77 Accounts.[2]

       b.  On or about September 24, 2020, a Bank-1 employee (the "Bank Employee") contacted LUKA KLASINC, the defendant, via email (the "Bank-1 Email"), asking to review the activity in the BOB77 Accounts. Particularly, the Bank Employee asked about: (i) a justification for the eleven SBA deposits; (ii) the nature of business conducted by BOB77; (iii) the purpose of the international wire transfers from the BOB77 Accounts; and (iv) the circumstances of the wire payments to BOB77 from the Montana Company. KLASINC responded on September 24, 2020, offering to set up a phone call.

       c.  On or about October 5, 2020, KLASINC sent an email (the "Klasinc Email") to the Bank Employee attached to which were several documents addressing the concerns raised in the Bank-1 Email. In the body of the Klasinc Email, KLASINC explained that the attachments were intended to "justif[y] and clear the situation." He implored Bank-1 to "[p]lease, sincerely please, activate my account immediately." The documents included, among other things, BOB77 promotional materials and three letters on BOB77 letterhead explaining the nature of BOB77's financial activity. In the letters, KLASINC explained that the outgoing wire transfers were payments to

---

[2] Based on my conversations with a Bank-1 employee, I have learned that, although the BOB77 Accounts were frozen on September 23, 2020, three outgoing wire payments, referenced in ¶ 9(i) were initiated before September 23, 2020 and released from the BOB77 Accounts after the BOB77 Accounts were frozen, on or about September 24, 2020.

7

corporate partners and equipment suppliers.  KLASINC stated that incoming transfers were a "delicate subject" and "strictly business matters."  KLASINC further explained that the SBA transfers represented "investment participation . . . not a loan."  In the body of the letters, KLASINC again implored Bank-1 to "accept [his] statement as [an] explanation" and to make his account "operational immediately."

        d.   The Klasinc Email also included a letter on SBA letterhead and dated October 1, 2020, which purported to "verify" that the sum of $1,999,000 was payable to "Luka Klasinc of BOB77 LLC," as "payment for property investment only" and not as a "loan of any sort" (the "Fraudulent SBA Letter").  The Fraudulent SBA Letter bore the name and signature of an SBA Employee with the title "Commercial Loan Service Center Director."  Based on my conversation with the SBA Employee, I have learned that the SBA did not issue the Fraudulent SBA Letter, nor did the SBA Employee affix his signature or give his permission for his signature to be affixed to the Fraudulent SBA Letter.

        e.   On or about December 2, 2020, Bank-1 closed the BOB77 Accounts due to suspicious activity.  On or about December 2, 2020, Bank-1 mailed checks totaling $398,525.15 from the BOB77 Accounts to the BOB77 registered business address in New York, New York.[3]  The checks were ultimately returned to Bank-1 as non-delivered.

    13.   Based on my review of records obtained from the Department of Homeland Security ("DHS"), I have learned that, on or about May 31, 2021, LUKA KLASINC, the defendant, arrived in the United States on a flight from Istanbul.

    14.   Based on my conversations with an employee of Bank-1 as well as my review of Bank-1 surveillance camera footage and records obtained from DHS, I have learned, among other things, the following:

        a.   On or about June 1, 2021, LUKA KLASINC, the defendant, visited Bank-1 in New York, New York, to inquire about the availability of the funds associated with the BOB77 Accounts.  At that time, a Bank-1 employee informed KLASINC that the funds were not available but that he should return to Bank-1 in 48 hours to try again.  Bank-1 then alerted law enforcement to the suspicious activity.

---

[3] Based on my conversations with a Bank-1 employee, I have learned that the checks were mailed in error at the time the BOB77 Accounts were closed.

8

   b. On or about June 2, 2021, KLASINC returned to Bank-1 and attempted to obtain funds from the BOB77 Accounts. He was again denied access to the BOB77 Accounts and was told to return on June 3, 2021.

   c. On or about June 3, 2021, KLASINC returned to Bank-1 a third time to attempt to obtain funds from the BOB77 Accounts (the "June 3 Visit"). During the June 3 Visit, a compliance officer from Bank-1 met with KLASINC and explained that Bank-1 needed additional information about BOB77's presence in the United States and the nature of the funds before the funds could be released. KLASINC explained that the funds represented deposits made by "investors." Bank-1 again denied KLASINC access to the funds.

   d. On or about June 3, 2021, after leaving Bank-1, KLASINC booked a flight, scheduled to depart from Newark on June 7, 2021, bound for Istanbul.

   e. Bank-1 has returned a total of $848,383.15 from the BOB77 Accounts to SBA.

 15. Based on my training, experience, and review of open source material, I have learned, in substance and in part, that Bank-1, was insured by the Federal Deposit Insurance Corporation during the time period during which LUKA KLASINC, the defendant, engaged in the transactions described above.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of LUKA KLASINC, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

                                               _/s **Ryan Redel** (By Court with Authorization)___
                                               RYAN REDEL
                                               SPECIAL AGENT
                                               FEDERAL BUREAU OF INVESTIGATION

Sworn to before me by reliable electronic means this 5th day of June, 2021

_____
THE HONORABLE SARAH L. CAVE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK